**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**DELTA DIVISION**

**MAKHIA TYRANIQUE AUSTIN** **PLAINTIFF**

**VS.** **No. 2:26-cv-00042 PSH**

**FRANK BISIGNANO, Commissioner,**
**Social Security Administration**[1] **DEFENDANT**

# ORDER

Plaintiff Makhia Tyranique Austin ("Austin") appeals the final decision of the Commissioner of the Social Security Administration (defendant "Bisignano") to deny her claim for Supplemental Security Income ("SSI"). Austin contends the Administrative Law Judge ("ALJ") erred in two ways: (1) finding that Austin did not meet or medically equal the requirements for intellectual disability under Listings 12.05B and 112.05B[2]; and (2) failing to properly assess the medical source opinions. Substantial evidence supports Bisignano's decisions.

---

[1] Frank Bisignano is properly identified as the defendant in this case. Fed. R. Civ. P. 25.

[2] The cited Listings both describe the requirements to demonstrate an intellectual disorder: Listing 12.05B applies to adults, while Listing 112.05B applies to children

The parties ably summarized the medical records and the testimony given at the administrative hearing, which was conducted on June 10, 2025. (Tr. 42-59). The Court has carefully reviewed the record to determine whether there is substantial evidence to support Bisignano's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from September 27, 2023, when the application was filed, through July 18, 2025, the date of the ALJ's decision.

*The Administrative Hearing:*

In response to questions posed by the ALJ, Austin testified she was 18 years old and recently graduated from high school. Austin described her school experience – she was in special education classes for reading and writing, her favorite class was college and career, and she got into trouble on "some days" for talking and having a bad attitude. (Tr. 47).

Austin began taking Risperidone in the 11th grade to help her deal with voices she heard. She also takes clonidine, and the combination of these two medications helped her deal with the audible voices and with depression. Austin described being depressed "some days" but was unable to pinpoint why. (Tr. 48). Austin also described a tic as "clearing my throat a lot." (Tr. 49). Austin had

---

(under the age of 18).

hoped for but was unable to secure a job at Chipotle.[3] In addition to the prescription medicine Austin was seen by a therapist – "I love talking to her." (Tr. 50).

Austin does chores, such as sweeping, washing dishes, and taking out trash. She sometimes needs reminders to do her chores but does not need reminders to take a bath or fix her hair. Austin makes lists for herself of reminders, using her phone. Her mother and her grandmother text or call with reminders for her chores. She goes to the grocery store if she is out walking and also attends church. For enjoyment, Austin colors, paints and makes TikTok videos with her friends.

Responding to questions posed by her attorney, Austin stated she considered taking the driver's examination but did not do so. At the time of the hearing, Austin resided with her mother. When her mother is at work, Austin watches TikTok videos and talks with her cousin on the phone. Austin likes to "hang out" and go to movies with her friends (she listed six friends). (Tr. 54).

Lynn Stanley ("Stanley"), a vocational expert, testified. The ALJ asked Stanley to consider a hypothetical worker of Austin's age, education, and experience, who could work at all exertional levels with the following restrictions:

---

[3] Austin later clarified that she thought about applying online for a job at Chipotle but did not do so. She allowed that she would "probably need help from somebody" to

can understand and remember simple instructions; can sustain attention and concentration to complete simple tasks; can interact as needed with supervisors, and can occasionally interact with co-workers but cannot interact with the public; and can adapt to occasional workplace changes. Stanley testified that such a hypothetical worker could perform the medium exertional level jobs of hand packager, store laborer, and laundry worker. Stanley testified no jobs were available if the hypothetical worker would be off task 15% of the workday. (Tr. 56-58).

*The ALJ's Decision*

Following the administrative hearing the ALJ, in his July 18, 2025, decision, determined Austin had the severe impairments of learning disorder in reading; borderline intelligence; unspecified schizophrenia spectrum disorder; adjustment disorder; and tic disorder. The ALJ found Austin, prior to attaining age 18, did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. Listing 112.05B, for intellectual disorder for a child, required the ALJ to consider how Austin functioned in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving

---

execute the online application. (Tr. 55).

about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. The ALJ explained that a claimant met this Listing if she had a "marked" limitation in two of the domains or an "extreme" limitation in one domain. The ALJ assessed Austin with a marked limitation in acquiring and using information, a less than marked limitation in three other domains, and no limitation in two domains.

In reaching these conclusions, the ALJ cited Austin's ability to perform many daily activities, including meal preparation, dishwashing, and laundry cleaning. Further, the ALJ observed Austin was able to get along with most people, enjoyed school, and could navigate Snapchat and TikTok.

The ALJ found Austin's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 21).

The ALJ then detailed his rationale for his findings in the six domains as follows:

*Acquiring and Using Information – Marked Limitation.* The ALJ acknowledged Austin's diagnosed reading comprehension impairment, which required individual and small group instruction. Even so, Austin was able to spend 92% of her school time in a general education setting and 8% in a special

education environment. The ALJ also noted her graduation from high school and the psychological exam conducted by Kenneth Jones, Ph.D.[4] showing a full-scale IQ of 61 along with Jones' comments that Austin's presentation appeared "contrived and exaggerated." (Tr. 21). The ALJ acknowledged numerous outpatient examinations assessing Austin with borderline intellectual ability, but also these examinations showed generally appropriate memory activity, age-appropriate orientation, and cooperative behavior. The ALJ also cited the conclusions of the state agency medical consultants that Austin had no greater than a marked limitation in this domain.

*Attending and Completing tasks,*[5] *Interacting and relating with others, and Caring for herself – Less than Marked Limitation.*

The ALJ again cited the state agency consultants' findings in these three domains. The ALJ also again cited the same factors addressed in the domain one discussion. In addition, the ALJ observed a teacher questionnaire which assessed

---

[4] Jones performed an evaluation of Austin in 2024 in connection with her disability application.

[5] On page 21 of the Transcript the ALJ erroneously states Austin had less than marked limitation in the domain of acquiring and using information. The ALJ's discussion, however, shows this to be a typographical error, and that he intended to list Austin as having a less than marked limitation in attending and completing tasks, the second domain. The ALJ had previously discussed the first domain of acquiring and using information.

Austin as having an obvious, but not serious, problem in attending and completing tasks, no more than a slight problem in interacting with others, and no more than a slight-to-obvious problem in her ability to care for herself. Finally, the ALJ cited the Function Report of Austin's grandmother, who indicated Austin "loves school," plays with others, and get along with everyone. (Tr. 22, citing Tr. 280).

*Moving About and Manipulating objects, and Health and Physical Well-Being – No Limitations.*

The ALJ cited normal physical examinations, normal gait and no abnormal extremity movement. Austin does not challenge these conclusions.

The ALJ concluded his analysis of whether Austin met Listing 112.05B by considering the findings of four state agency consultants (Stephen Whaley, Kevin Santulli, Robert Morrisey, and David Voss). Their findings were persuasive to the ALJ, except for Robert Morrisey, whose findings he deemed mostly persuasive.

The ALJ next considered Jones' report following the 2024 examination. The ALJ found Jones' offered opinion "not consistent with his exam findings." (Tr. 24). The ALJ also found Jones' findings inconsistent with other evidence in the record. For example, the ALJ observed Austin's 2022 composite IQ score of 72 differed from Jones' full-scale IQ result of 61. Also, a teacher of Austin's opined to no more than obvious problems in Domains I and II, which was at odds

with Jones' opinion. The ALJ concluded Jones' opinions were unpersuasive.

Finally, the ALJ reviewed the Function Report of Austin's grandmother, who wrote that her granddaughter suffered from schizophrenia and learning disorder symptoms and limitations in her ability to understand and process information and interact with others. The grandmother also noted Austin's abilities: daily activities such as meal preparation, dishwashing and laundry; using TikTok and Snapchat; enjoying school and playing with others. The ALJ found this testimony somewhat persuasive, mirroring the objective medical evidence which showed both a history of learning disorder, borderline intellectual functioning, adjustment disorder and schizophrenia disorder while, at the same time, examinations showed Austin's mood and affect frequently within normal limits, cooperative behavior, clear speech, appropriate memory, and alert and oriented cognition.

Ultimately finding Austin did not have either "marked" limitations in two of the domains of functioning or an "extreme" limitation in one domain, the ALJ found she was not disabled prior to attaining age 18.

The ALJ then engaged in a different analysis under the regulations, finding Austin did not meet or medically equal the requirements for intellectual disability under Listing 12.05B, which applies after a claimant turns 18. As part of this

analysis the ALJ considered the "paragraph B" criteria, rating Austin in four broad areas of functioning, finding she had: (1) a moderate limitation in understanding, remembering or applying information; (2) a moderate limitation in interacting with others; (3) a moderate limitation with regard to concentrating, persisting or maintaining pace; and (4) a moderate limitation in adapting or managing oneself. In reaching these conclusions, the ALJ cited the same sources he considered in analyzing the six relevant domains for a claimant under the age of 18: the amount of time in general education high school classes, graduation from high school, the grandmother's function report, objective reports, and the findings of the state agency consultants. Since Austin was not markedly limited in two of these areas, or extremely limited in one area, the "paragraph B" criteria were not satisfied.

The ALJ also found the "paragraph C" criteria of Listings 12.02, 12.03, and 12.04 were not met because there was no evidence that Austin required inpatient psychiatric hospitalization, or that she engaged in highly structured outpatient mental health treatment with only marginal improvement.

Addressing the specific requirements of Listing 12.05B, the ALJ found Austin did not satisfy Paragraph A "because there is no evidence of significantly subaverage general intellectual functioning preventing the claimant from participating in standardized intelligence testing, nor is there evidence of

significant adaptive functioning deficits making the claimant dependence [sic] upon others for personal needs." (Tr. 28). The ALJ found Austin did not meet Paragraph B of the Listing because she had no greater than moderate limitation in the "Paragraph B" domains of functioning.

The ALJ next concluded Austin had the RFC to perform a full range of work at all exertional levels with the limitations set forth in the first hypothetical question posed to Stanley.

As he had done in considering disability prior to age 18, the ALJ opined that Austin's impairments could reasonably be expected to cause her alleged symptoms. However, the ALJ found Austin's statements about the intensity, persistence, or functionally limiting effects of the symptoms were "not substantiated by objective medical evidence." (Tr. 29).

The ALJ again cited examples of objective medical evidence at odds with Austin's subjective statements: examinations showing normal ambulation, frequently logical thought processes, cooperative behavior, clear and intelligible speech, age-appropriate memory, and intact psychological orientation.[6] The ALJ

[6] These findings cited by the ALJ were from Jones' May 2024 examination (Tr. 493) and from notes from ARISA health, therapists, who interacted with Austin in August, September, and October 2024 and in January and March 2025. (Tr. 502, 508, 526, 531, and 536).

also again noted that Austin's Individualized Education Program ("IEP") reflected she spent 92% of her education time in a general education environment and 8% in special education, and she testified she graduated from high school. (Tr. 45, 486). And the ALJ recited the 2022 test showing a composite IQ of 72 versus Jones' 2024 full-scale IQ score of 61, along with Jones' observation that Austin's presentation appeared "contrived and exaggerated." (Tr. 30, quoting Jones at Tr. 495). The medical opinions of the state agency consultants and Jones were reviewed, as was the function report authored by Austin's grandmother.

Relying upon Stanley's expert testimony, the ALJ concluded that there were jobs which Austin could perform, and she was not disabled. (Tr. 14-36).

*Claim One – the ALJ erred in finding that Austin did not meet or medically equal the requirements for intellectual disability under Listings 12.05B and 112.05B.*

When considering a claim of error in evaluating the Listings, "[t]he burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing. To meet a listing, an impairment must meet all of the listing's specified criteria." *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004) (citation omitted). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct.

885, 107 L.Ed.2d 967 (1990)." *Schmitt v. Kijakazi*, 27 F.4th 1353, 1358–59 (8th Cir. 2022). Generally, the Listings define impairments that would prevent the claimant from performing any gainful activity, not just "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. at 532. The standards for listed impairments are strict because, when met, they automatically end the five-step inquiry. *Id.* at 532 ("the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary").

There are two components to satisfying Listings 112.05B and 12.05B. One, the claimant must show a low IQ score, defined as a full-scale (or comparable) score of 70 or below. The ALJ acknowledged Jones' IQ evaluation of 61,[7] satisfying the first component. Second, the claimant must show at least two "marked" limitations or one "extreme" limitation in the four areas of functioning known as the "Paragraph B" criteria.

As previously noted, the ALJ found Austin to have moderate limitations in all four areas of functioning. Austin contends her serious limitations in all four of these areas were overlooked or undervalued by the ALJ.

[7]As mentioned, another IQ test, administered in 2022, found Austin had a composite score of 72.

In the area of understanding, remembering, and applying information, Austin cites the IQ score of 61 obtained in 2024 in testing by Jones. Jones also diagnosed her with intellectual disability and a history of learning disabilities, opining that Austin's "actual functioning level is considered to be in the intellectually impaired range and [she] has problems understanding. She will have problems comprehending basic instructions." (Tr. 495). On the other hand, in the same report Jones observed Austin was calm and stable, her affect was consistent with her mood, her speech was unremarkable and age appropriate, and she did not report with any intrusive thoughts, unusual thoughts, or false beliefs. And he noted her presentation "does  appear contrived and exaggerated."[8] (Tr. 495). The ALJ found Austin had a moderate limitation in this area of functioning. Austin's reliance on Jones' opinion to elevate her limitation to "marked" fails because the opinion is not wholly in her favor, containing some statements which detract from her argument. In other words, this evidence supports the ALJ's finding even though some portions also support Austin's position. The Court's role is not to re-weigh the evidence and come to an independent conclusion. "Instead, if, after

---

[8] Austin maintains that the double-spacing between "does" and "appears" in Jones' report suggests a typographical error, and that Jones intended to write that Austin "does *not* appear contrived or exaggerated." This suggestion, without more evidence of Jones'

reviewing the evidence, the court finds it 'possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, [the court] must affirm the [Commissioner's] decision.' *Id.* (quoting *Robinson v. Sullivan,* 956 F.2d 836, 838 (8th Cir.1992), and citing *Cruse v. Bowen,* 867 F.2d 1183, 1184 (8th Cir.1989)); *accord Baldwin,* 349 F.3d at 555; *Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir.2000)." *Rittenhouse v. Astrue*, 767 F. Supp. 2d 985, 1000–01 (N.D. Iowa 2011).

Austin also contends that the ALJ erred in relying too heavily on outpatient mental status exams which showed she had "appropriate memory activity, logical thought processes, and appropriate orientation." (Tr. 26). These findings, according to Austin, do not indicate the absence of intellectual disability. These findings, citing therapists' notes from ARISA health, were one of the factors the ALJ cited. Her argument may have more appeal if these findings were the only factor cited. These findings, however, were properly cited as consistent with Austin's graduation from high school, her apportionment of time in high school between general education and special education classes, and the findings of the state agency consultants. These factors, along with Austin's testimony and her

---

intent, is not persuasive.

grandmother's function report,[9] combined to support the ALJ's determination of a moderate limitation in the area of understanding, remembering, and applying information. These same factors support the moderate determination in the three other areas of functioning.

Austin's testimony, her grandmother's comments, and her ability to successfully complete high school weigh in favor of the ALJ's moderate rating in her ability to interact with others. While acknowledging Austin was occasionally distractible, the ALJ did not err in citing mental status exams, Austin's daily activities, and her grandmother's statements support the moderate limitation in concentrating, persisting or maintaining pace. And Austin's school performance, daily activities, and ability to care for herself corroborate the ALJ's view of adapting or managing oneself. Substantial evidence supports the ALJ's decision that the "Paragraph B" criteria was not satisfied.[10]

---

[9] The function reports of Austin's grandmother provides a mixed picture of her abilities. For example, her grandmother indicates she does not like being around a crowd (Tr. 247), struggles to finish tasks (Tr. 249), cannot multitask or completely comprehend, has trouble staying focused (Tr. 276), and cannot tell time or count change (Tr. 254). On the other hand, Austin's grandmother stated she was able to add, subtract, multiply, and divide numbers over 10 (Tr. 246), had no limitation in her ability to communicate (Tr. 253), daily participated in hobbies of TikTok, ShapChat, and cartoons, loved school and playing with others, and got along with everyone. (Tr. 280). This mixed view supports the ALJ's "Paragraph B" conclusions.

[10] Austin notes a discrepancy when the ALJ found she had a "marked" limitation in acquiring and using information when analyzing the six domains of functional

*Claim Two – The ALJ failed to properly assess the medical source opinions of Jones and state agency consultants Morrissey and Voss.*

The relevant regulations require the ALJ to assess the persuasiveness of these medical opinions. At a minimum the ALJ must address each opinion's supportability and consistency. 20 C.F.R. § 416.920c(a), (c). Supportability is whether the opinion is supported by objective medical evidence and by the source's own explanation of the opinion. Consistency is whether the opinion is consistent with the other medical evidence in the record. 20 C.F.R. § 416.920c(c).

The ALJ found Jones' opinions unpersuasive, noting he "offered opinions not consistent with his exam findings." (Tr. 24). The ALJ also noted the disparity of Jones' IQ testing and the test results obtained by the school psychologist (61 IQ by Jones and 72 IQ via school testing). A further inconsistency was cited – Jones, whose findings were based upon a one-time examination, opined Austin would be unable to work efficiently or persist to tasks but her teacher opined Austin had no more than obvious problems in Domains I and II. As for supportability, Jones'

---

equivalency but only a "moderate" limitation when assessing her ability to understand, remember, or apply information when considering the "Paragraph B" criteria. Austin does not cite to precedent suggesting the ALJ was obligated to mirror the six domain finding when analyzing the "Paragraph B" criteria. Even if that were the case the undersigned finds substantial evidence supports the other three "Paragraph B" criteria. The criteria would still be satisfied if one, but not more than one, of the four factors were

opinions are somewhat precarious due to his finding that Austin's presentation was contrived and exaggerated, and due to his reliance on the self-reported statements of Austin and her grandmother. The ALJ adequately considered the persuasiveness of Jones' opinions. *See Austin v. Kijakazi*, 52 F.4th 723 (8th. Cir. 2022) (reliance on self-reports by one-time psychological examiner properly considered by the ALJ).

The ALJ found persuasive the opinions of state agency consultants Morrisey and Voss that Austin had a moderate, but not greater, limitation in all four areas of the "Paragraph B" criteria. The ALJ found both Morrisey and Voss "sought to support their conclusions by referencing their reviews of the claimant's medical history." (Tr. 31). This satisfies the supportability requirement of the regulations.[11] The ALJ listed the objective medical evidence consistent with the opinions of Morrisey and Voss. This included objective mental status examinations which reflected impairments, signs of borderline functioning, but also many findings within normal limits. There was no error in the ALJ's consideration of the opinions of Morrisey and Voss. *See Austin v. Kijakazi, supra,*

---

"marked."

[11] Part of the supportability analysis is whether the opinion is supported by the source's own explanation of the opinion. In the case of state agency consultants, their explanation would not include personal observations since they did not examine Austin.

and *Larson v. Bisignano*, 2026 WL 2085030 (8th Cir.) (July 20, 2026) (in considering state agency opinions the ALJ not required to reconcile every conflicting shred of medical evidence).

*Conclusion*

The essential question is whether the ALJ erred in assessing Austin's mental abilities. The ALJ included non-exertional limitations to account for her mental impairments. These limitations included variables limiting the nature of instructions to be given, interaction with others, and the pace of workplace changes. Substantial evidence supports the ALJ's assessment of her impairments, as well as the allowances for those impairments in his RFC ruling.

In summary, the Court finds that substantial evidence supports the determinations reached by the ALJ. The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is amply satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Bisignano is affirmed and Austin's complaint is dismissed with prejudice.

IT IS SO ORDERED this 30th day of July, 2026.

____________________________________
UNITED STATES MAGISTRATE JUDGE